IN THE UNITED STATES DISTRICT FOR THE EASTERN DISTRICT
OF TENNESSEE AT KNOXVILLE

ESTATE OF DUSTIN BARNWELL, by
Next of kin, SHAILI CHEYENNE BARNWELL,
a Minor, b/n/f SHASTA LASHAY GILMORE,

        Plaintiff,                        CASE NO. 313-CV-124

vs

ROANE COUNTY, TN GOV'T; MITCH GRITSBY,
In His Individual and Official Capacity, RICHARD
STOOKSBURY, In His Individual and Official Capacity;
DAVID RANDLE, Medic, In His Individual and
Official Capacity; ROBERT COOKER, Medic, In His
Individual and Official Capacity; MIKE CARTER, Medic,
In His Individual and Official Capacity; and MIKE MYERS,
Medic, In His Individual and Official Capacity,

        Defendants.

---

## AMENDED AND RESTATED COMPLAINT

### JURISDICTION AND VENUE

This case has been removed to this Court by the Defendants from the Circuit Court of Roane County, Tennessee.

Jurisdiction in this Court is also founded upon 28 U.S.C. § 1331 because this is an action pursuant to 42 U.S.C. §§ 1983, 1985, 1988.

Venue is proper in this Court under 28 U.S.C. § 1391. The events giving rise to the claims asserted in this Complaint occurred in this District.

### IDENTIFICATION OF THE PARTIES

1.    The Estate of Dustin Barnwell is the plaintiff in this matter. His sole next-of-kin is his minor daughter, Shaili Cheyenne Barnwell (DOB: 4/23/09), whose natural mother and next friend is Shasta Lashay Gilmore.

2.     On November 11, 2011, the day he died, Dustin Barnwell was a resident of Roane County, Tennessee, as was his next-of-kin and her natural mother, both of whom continue to survive him and to live in Roane County, Tennessee.

3.     Every cause of action and every party has a sufficient nexus to Roane County to warrant this Court's jurisdiction over them, as Mr. Barnwell's estate is alleging that the acts of Roane County, Tennessee employees caused his wrongful death in Roane County, Tennessee.

4.     On November 11, 2011, Ms. Gilmore, her daughter and the decedent all resided at 115-B Roane Manor Drive in Kingston, Tennessee. The surviving two now live in Harriman, Tennessee, at 1728-A Bennett Circle.

## NATURE OF THE CASE

5.     This action is brought under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101 et seq., and the statutes and common law of Tennessee relating to wrongful death (TCA § 20-5-106), as well as common law and statutory negligence..

6.     It is also an action pursuant to 42 U.S.C. §§ 1983, 1985, 1988, which provides that every person who, under color of law, subjects another party to the deprivation of any right secured by the U.S. Constitution or laws is liable to the other party.

## ALLEGATIONS

7.     On the evening of November 11, 2011, Ms. Gilmore became concerned about the well-being of Dustin Barnwell, who seemed to be unresponsive after taking some Flexerill tablets.

8.     After Ms. Gilmore called 911 for medical assistance, Richard Stooksbury and Mitch Gritsby, both Roane County law enforcement officers, became the first responders. Before five minutes had passed, the officers had pulled Dustin's legs, grabbed him by the throat, berated him and pushed him down when he tried to sit up on his own couch.

9.      Instead of waiting for the medics to arrive, these officers yanked Mr. Barnwell from his couch and forced him face-down on the hardwood floor. Next, they handcuffed him, binding Barnwell's wrists behind his back.

10.     As a prone Mr. Barnwell lay cuffed and pinned on a hard floor, the officers combined to immobilize him by placing their considerable weight and force upon his back, neck and shoulders.

11.     Prior to November 11, 2011, Officer Stooksbury had long held Mr. Barnwell in contempt; he once hammerlocked Dustin's arm and made threats to break it. In fact, well before November 11, 2011, Mr. Barnwell had, on at least two prior occasions, expressed his fear that Stooksbury would try to kill him.

12.     Upon their entry, the two Roane County officers knew that Dustin had ingested some Flexerill, though in dosages nowhere near fatal. They knew Dustin was within the confines of his own home. Yet, when they entered his home, they applied serious force against him. They bruised him, they hurt him, they frightened him, and ultimately, they caused him to fear for his life.

13.     Later, when the medics arrived, the officers conferred with them as to how to best quiet Dustin down.

14.     The medics and officers determined that knocking Dustin out was the best course. To further this aim, medic Robert Cooker administered Succinylcholine to Dustin through an IV, paralyzing his lungs such that Dustin could not breathe on his own.

15.     All defendants, including the medical defendants, knew that Mr. Barnwell, who was handcuffed and laying prostrate on the floor, never consented to the IV injection of Succinylcholine. Nonetheless, Robert Cooker administered to Dustin a paralyzing drug that Dustin did not consent to receive.

-3-

Case 3:13-cv-00124-PLR-HBG   Document 20   Filed 04/22/13   Page 3 of 15   PageID #: 151

16. The medical defendants administered the drugs at the urging of the officers, particularly Stooksbury. Every defendant knew Succinylcholine is a paralyzing drug.

17. Every defendant knew that these IV fluids were a form of police discipline and in no way a patient-oriented treatment based upon any rational theory of medical science.

18. Yet, not one of the named defendants interceded to stop the administration of this deadly paralytic. Every defendant intended to paralyze Dustin.

19. When Mr. Barnwell stopped breathing, the defendant medics sought to insert a breathing tube down his airways; instead, they inserted the breathing tube down his esophagus, pushing air toward his stomach.

20. This insertion caused turbid brown fluid to settle in both the breathing tube and in Dustin's stomach.

21. Every defendant endorsed the autopsy's conclusion: That a 26-year-old male of ordinary weight died from excited delirium and elevated Flexerill levels as measured during Dustin's autopsy.

22. Dr. Bennett, the Roane County Medical Examiner, has refused to make his medical records and notes available for review, even though he holds a public trust and perpetuated his records pursuant to a public duty. This doctor refused to consult with Plaintiff's expert. Dr. Bennett has stated that he will not divulge a single record to Attorney Wolfe unless he receives a judicial summons or notice.

23. Constructing yet another obstacle to plaintiff's fact-finding, defendants' legal representatives have stated flatly that no representative of the plaintiff shall contact a single county employee about a single matter related to this lawsuit.

24. Meanwhile, defendant Robert Cooker visited a local pharmacy for the purposes of intimidating and harassing Karen Human, a pharmacy employee who is also a witness in this

case. Cooker walked around the store, invaded Ms. Human's space, expressed angry words, and then sought out Ms. Human's supervisor, to whom Cooker delivered his ultimatum: Fire Ms. Human. or Cooker's entire family will forever boycott the store and pharmacy.

25.  Though twice requested to do so by Plaintiff's representative, the defendants' legal representatives have so far refused to verify the type of license, if any, each of the medical defendants held on November 11, 2011.  Thus, they have purposely left in doubt whether any of these medical defendants have the licensure status to qualify for protection under the Tennessee Medical Malpractice Act (TMMA) § 29-26-101, *et seq*.

26.  Defendant medics knew immediately after Dustin died that they had inserted the tube down his esophagus.  They fraudulently concealed their error by omitting reference to it in any report, by changing the position and location of the tube before the treating doctor saw it and could evaluate its placement, disseminating incomplete or false information when they had a public duty to impart by word or written statement only the complete truth about the facts they knew about Mr. Barnwell's death.

27.  Every medic defendant was a state actor.  Yet, every medic attempted to fraudulently conceal facts, each with a view toward blocking Dustin's heirs at the courthouse door.

28.  Each medic defendant has consistently maintained that the combination of Flexerill and excited delirium killed the 26-year-old Barnwell.

## CLAIMS UNDER 42 U.S.C. § 1983

29.  Incorporating all previous paragraphs, plaintiff alleges that the defendants violated Mr. Barnwell's rights under the Fourth, Eighth and Fourteenth Amendments as secured to him by 42 U.S.C. 1983.  These violations occurred in the following ways:

a) In a custodial setting, both the medical defendants and police defendants violated Barnwell's rights to be secure in his person by forcing into his body fluids that paralyzed him;

b) Every aforedescribed act occurred under color of law, while all defendants were in the course and scope of their employment with Roane County;

c) The administration by state actors of paralyzing drugs constituted a seizure of Barnwell's person, unconstitutional under clearly established law, to wit, the Fourth and Fourteenth Amendments to the U.S. Constitution and the ample case law that has reified these rights in contexts identical or extremely analogous to Mr. Barnwell's;

d) The forcible introduction of paralyzing fluids into Barnwell's body further violated his well-established rights under the Eighth and Fourteenth Amendments, inasmuch as the defendants administered these fluids to an arrestee. Prone and handcuffed, Barnwell never consented to what these medics did with the encouragement and assistance of the officers;

e) Making medicine a tool of police discipline defies the Eighth and Fourteenth Amendments and is unconstitutional under the clearly established case law from both the U.S. Supreme Court and the Sixth Circuit Court of Appeals;

f) Every defendant exhibited deliberate indifference to Barnwell's serious medical needs either by actually forcing into Barnwell's bloodstream a paralyzing fluid, or encouraging others to do so; as a state actor, each defendant thereby dramatically increased the risk that serious or deadly harm would befall Mr. Barnwell. Each defendant subjectively knew of the increased risk, and every one of them immediately and subjectively knew of the consequences that attended their acts. Yet, each defendant exhibited deliberate indifference to these acts that increased the risk of serious bodily harm to Mr. Barnwell; as a result, each violated not only the Fourth and Fourteenth Amendments to the U.S. Constitution, but also the Eighth Amendment, inasmuch as forced paralysis in a custodial

setting is a glaring example of the cruel and unusual punishment that this amendment forbids state actors from undertaking;

g) Violating each of the cited amendments, no defendant interceded to stop, alter or restrain the unconstitutional actions in which any number of the other defendants were taking against Barnwell;

h) The Roane County Sheriff, County Mayor, Council, and all other decision makers, have never questioned any of the acts that any defendant took relative to Dustin Barnwell on Friday, November 11, 2011;

i) In fact, the aforementioned entities have admonished or disciplined no defendant for any act that any took toward Dustin Barnwell on November 11, 2011;

j) In fact, there is no written evidence that any Roane County decision maker expressed any misgivings over what happened to Dustin Barnwell on November 11, 2011;

k) Defendant Roane County government has ratified each of the actions that every defendant took with regard to Dustin Barnwell on November 11, 2011;

l) Because defendant Roane County has a history of failing to investigate in-custody deaths, and in disciplining officers for them, the county has fostered a culture in which excessive force against or deliberate indifference to arrestees and prisoners is the custom and practice of county law enforcement;

m) Thus, Roane County was the moving force behind the death of Dustin Barnwell, as its law officers and medics correctly expected that they would suffer no adverse employment consequences for their actions with regard to Dustin Barnwell;

n) Prior to November 11, 2011, Roane County was deliberately indifferent to the safety and well-being of its citizens in that it failed to train its officers in how to interact effectively with either Emotionally Disturbed Individuals (EDI) or those laboring under excited delirium. Such deliberate indifference either caused or contributed to the death of Dustin Barnwell;

o) Roane County exhibited similar indifference to the safety of its citizenry by failing to train either of the defendant officers about the dangerous risks of positional asphyxiation, and the statutory law in Tennessee that proscribes it. Pleading alternatively and citing all previous paragraphs, the plaintiff avers that such failure contributed to the death of Dustin Barnwell, inasmuch as the officers combined to apply their weight and force against Dustin's back, neck and shoulders while Dustin lay handcuffed and prone on a hard surface. Such forceful compression, if exerted upon the chest of an already compromised person, invites disaster.

p) Roane County was further deliberately indifferent in that it failed to train the medical defendants as to when or how to administer paralytics properly, or as to the proper placement of breathing tubes.

## COMMON LAW BATTERY

30. Incorporating paragraphs 8 through 21 and 27 through 29, the plaintiff alleges that the handcuffing, restraints, and forced drug administration constituted batteries under the common law of Tennessee, all acts that both officers aided, abetted, encouraged, or effected. The medical defendants committed battery by their forceful and unconsented administration of a paralytic into the body of Dustin Barnwell.

## NEGLIGENCE CLAIMS

31. Pleading in the alternative, the plaintiff states that the defendant law officers were negligent in that each misapprehended the risks inherent in the restraint maneuvers they applied to Dustin's body, just as each negligently misapprehended the risks inherent in encouraging and directing the medics to use needles and paralyzing fluids to impose discipline on their arrestee in custody.

32. Together or separately, these aforementioned acts of negligence constituted the proximate cause of Mr. Barnwell's death.

33. The medical defendants were further negligent in that each of them, particularly Cooker, misapprehended the risks of administering a paralytic fluid (Succinylcholine) to a patient whose condition, under any conceivable set of circumstances then existing, did not warrant it.

34. The medical defendants may have been negligent in allowing the law officers to set the terms for the treatment they rendered to Dustin Barnwell.

35. The medics' negligence was simple in that it is within the common knowledge of a layman that no person should purposefully shut down breathing lungs.

36. Continuing to plead alternatively, the plaintiff avers that this same negligence precipitated a medical emergency, to wit, the cessation of Dustin Barnwell's breathing.

37. The response of the medical defendants to this emergency was negligent in that these medical defendants inserted a breathing tube, meant for his airway, right down into Dustin Barnwell's esophagus. The difference between the airway and esophagus is common knowledge, plain to anyone who has ever swallowed food or contemplated a Heimlich maneuver.

38. As a result of their negligence, the medical defendants could not revive Dustin Barnwell, whose airway was clear, and whose lungs were receptive to revival had the medical defendants used the due care and diligence necessary to properly place the breathing tube.

39. Roane County was negligent in its hiring, training, supervising, discipline and retention of the individual defendants. More particularly, Roane County failed to educate the defendant law officers in the appropriate manner of dealing with emotionally disturbed individuals or those suffering under excited delirium; in a similar vein, Roane County was negligent in retaining any defendant who could not correctly place a breathing tube or avoid the improper introduction of paralytics.

## RES IPSA LOQUITUR

40. Inasmuch as the defendants had total control of defendant's body (they restrained, handcuffed, pinned, immobilized, injected and drugged him) in a custodial setting, plaintiff alleges that the res ipsa loquitur doctrine applies to the negligence claims in this case. Death in a custodial setting, one closely controlled by these defendants, would not ordinarily occur in the absence of the negligence of one or more of these defendants.

## 42 USC § 1985 CLAIMS

41. Incorporating all preceding paragraphs, plaintiff alleges that the medical defendants, as state actors, acted in concert with the officer defendants, to seize the body of Dustin Barnwell and inject him with paralytic fluids without his consent.

42. After Dustin's death, the defendants acted in concert to conceal the actual cause of Dustin Barnwell's death. Though each was under a public duty to report the facts about Dustin's death truthfully and completely, none did. Each was either active or complicit in conveying the falsehood that a 26 year old died from excited delirium and a Flexerill level that was far from deadly.

43. Acting in concert, the defendants allowed this cause of death to appear on Dustin's Death Certificate, as no defendant made a single effort to correct what they knew to be a glaring falsehood in a public document.

44. Every defendant conspired to allow this document to stand uncorrected because reporting the truth, as they were under a legal and public duty to do, would have revealed their own culpability for Mr. Barnwell's death.

45. Each defendant conspired to make certain that the misplacement of the breathing tube would remain unknown, that the deadly effects of the Succinylcholine would remain

minimized, and that the fact that the administration of this paralytic was needless would evade review.

46. Each defendant conspired to conceal the fact that the law officers commandeered Dustin's medical case by initiating or encouraging the use of a paralytic fluid as a measure of disciplining Mr. Barnwell while he was in police custody.

RELIEF SOUGHT

47. Plaintiff asks for the following relief:

   a) Reasonable expenses arising from the funeral and burial of Dustin Barnwell;
   b) Attorney fees as provided for by 42 U.S.C. § 1988;
   c) Payment of doctor, ambulance and/or hospital bills, if any, associated with the death of Dustin Barnwell;
   d) The value of the pain and suffering that Dustin experienced from the time the law officers entered his house up until the time he died;
   e) The pecuniary value of Dustin Barnwell's life;
   f) Miscellaneous damages under the Tennessee Wrongful Death Act, which now includes compensation for the minor daughter's loss of consortium with her father;
   g) Injunctive relief;
   h) Factual referrals to the appropriate state and federal law enforcement agencies;
   i) An appropriate amount of punitive damages against the appropriate defendants;
   j) Any other relief to which the evidence in this case may show the plaintiff to be entitled to;
   k) Interest;
   l) Relief and damages under the federal common law, should any be proven, applicable to this case;

m) Relief, under the Tennessee Constitution, Article One, which features an "open courts" provision that guarantees all citizen access to judicial redress through the courts, as does the Fourteenth Amendment to the U.S. Constitution. Defendants attempted to deny the plaintiff such access by failing to disclose and hiding the evidence of the true cause of Dustin Barnwell's death.

Respectfully Submitted,
**LAW OFFICES OF JOHN M. WOLFE, JR.**

By: *John Wolfe, Jr.*
John M. Wolfe, Jr. BPR # 010319
707 Georgia Avenue, Suite 401
Chattanooga, Tennessee 37402
(423) 265-8055

| | |
|---|---|
| **ESTATE OF DUSTIN BARNWELL**, by Next of kin, **SHAILI CHEYENNE BARNWELL**, a Minor, b/n/f **SHASTA LASHAY GILMORE** <br><br> **Plaintiff**, <br> V. <br><br> **ROANE COUNTY, TN GOV'T**; **MITCH GRITSBY**, In His Individual and Official Capacity, **RICHARD STOOKSBURY,** In His Individual and Official Capacity; **DAVID RANDLE**, Medic, In His Individual and Official Capacity; **ROBERT COOKER**, Medic, In His Individual and Official Capacity; **MIKE CARTER**, Medic, In His Individual and Official Capacity; and **MIKE MYERS**, Medic, In His Individual and Official Capacity. <br><br> Defendants. | **NO. 313-CV-124** |

## CERTIFICATE OF GOOD FAITH
### Medical Malpractice Case
### PLAINTIFF'S FORM

A. In accordance with T.C.A. § 29-26-122, I hereby state the following: (Check item 1 or 2 below and sign your name beneath the item you have checked, verifying the information you have checked. Failure to check item 1 or 2 and/or not signing item 1 or 2 will make this case subject to dismissal with prejudice.)

1. The Plaintiff or Plaintiff's counsel consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

(A) Are competent under § 29-26-115 to express opinion(s) in the case; and

(B) Believe, based on the information available from the medical records concerning the care and treatment of the Plaintiff for the incident(s) at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115.

- As to defendants choice, and administration of fluids (succinylcholine).

2. The Plaintiff or Plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

(A) Are competent under § 29-26-115 to express opinion(s) in the case; and

(B) Believe, based on the information available from the medical records reviewed concerning the care and treatment of the Plaintiff for the incident(s) at issue and, as appropriate, information from the Plaintiff or others with knowledge of the incident(s) at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to the Plaintiff or Plaintiff's counsel; and that despite the absence of this information there is a good faith basis for maintaining the action as to each Defendant consistent with the requirements of § 29-26-115.

- As to defendants' insertion of a breathing tube, which we allege to have been negligent.

*John Wolfe, Jr.*
Signature of Plaintiff if not represented,
or Signature of Plaintiff's Counsel

B. You MUST complete the information below and sign:

I have been found in violation of T.C.A. § 29-26-122 _0_ prior times. (Insert number of prior violations by you.)

*John Wolfe, Jr.*      April 22, 2013
John M. Wolfe, Jr. #010319      Date

-14-

# CERTIFICATE OF SERVICE

   I, the undersigned attorney, do hereby certify that the foregoing document, has been served upon all counsel of record for the parties at interest in this cause by placing a true and correct copy of same in the United States mail, postage paid, in a properly addressed envelope; or by hand delivering same to each attorney, as follows:

Jeffrey R. Thompson
O'NEIL, PARKER & WILLIAMSON, PLLC
7610 Gleason Drive, Suite 200
Knoxville, TN 37919

This the 22 day of April, 2013.

              BY: *John Wolfe, Jr.*
                 JOHN M. WOLFE, JR.

              LAW OFFICES OF JOHN M. WOLFE, JR.
                707 Georgia Avenue, Suite 401
                 Chattanooga, Tennessee 37402
               (423) 266-8400/ Fax (423) 265-8055

-15-

Case 3:13-cv-00124-PLR-HBG   Document 20   Filed 04/22/13   Page 15 of 15   PageID #: 163