UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| Estate of Dustin Barnwell, ) | | |
| by next of kin, Shaili Cheyenne Barnwell, ) | | |
| a minor, b/n/f, Shasta Lashay Gilmore, ) | | |
| ) | | |
| *Plaintiff*, ) | | |
| ) | | |
| v. ) | No.: 3:13-CV-124-PLR-HBG | |
| ) | | |
| Roane County, Tennessee., *et al*., ) | | |
| ) | | |
| *Defendants*. ) | | |

## **Memorandum Opinion and Order**

In November 2011, Dustin Barnwell took eight Flexeril tablets and passed out on his couch at home. Concerned that he was overdosing, Mr. Barnwell's fiancée, Shashta Gilmore, called 911. Roane County police officers Richard Stooksbury and Mitch Grigsby were the first to respond. When they arrived, they found Mr. Barnwell unconscious on the couch in the living room. Ms. Gilmore warned them that when she had been able to wake Mr. Barnwell he was "very combative."

The officers approached Mr. Barnwell and tried to wake him up by speaking to him and by shaking his feet. It worked. Mr. Barnwell woke up and became very combative, yelling and kicking at Officer Stooksbury. The officers attempted to restrain Mr. Barnwell by holding his arms, but they had difficulty calming him down. When the officers asked Mr. Barnwell what he had taken, he would not respond other than to shout and yell. Mr. Barnwell repeatedly fell in and out of consciousness throughout this process. Eventually, the officers "took Barnwell to the ground and controlled both of his arms" in an attempt to control his combative behavior.

Around this time, the first EMS paramedics, defendants Randle and Myers, arrived. The medics asked the officers to handcuff Mr. Barnwell so they could treat him. Still, after being handcuffed, Mr. Barnwell remained combative and would not calm down. Two more paramedics, defendants Cooker and Carter, arrived at Mr. Barnwell's house. Mr. Barnwell was still combative despite being restrained. He would not speak to the paramedics, he had highly elevated blood pressure, and his pupils were not reactive. The medics determined that Mr. Barnwell was possibly overdosing.

At this point, the medics inserted an IV and administered a drug called Succinylcholine to paralyze Mr. Barnwell. According to the defendants, this was a medical decision made by the medics. The plaintiff, on the other hand, asserts that the officers conferred with the medics and jointly decided to paralyze Mr. Barnwell. The plaintiff contends that the drugs were administered at the urging of the officers, particularly Officer Stooksbury, and that the drug-induced paralysis was not based on any patient-oriented rational theory of medicine, but was punitive in nature or, at best, a dangerous method of dealing with unruly patients.

The paralysis prevented Mr. Barnwell from breathing on his own, so the medics inserted a tracheal tube to keep Mr. Barnwell from asphyxiating. According to the plaintiffs and their expert, it appears that, rather than correctly inserting the tube down Mr. Barnwell's trachea, the medics inserted it down his esophagus and into his stomach—where, for obvious reasons, it could not help Mr. Barnwell breathe. Mr. Barnwell then began suffering "cardiac issues" and the medics administered additional medications and began CPR. When brown fluid appeared in the tracheal tube, the medics removed the tube and placed it correctly down Mr. Barnwell's airway. Mr. Barnwell died shortly after arriving at the hospital. The parties dispute the actual cause of his death.

The plaintiff filed this suit in the Roane County Circuit Court in March 2013. She amended her complaint after the defendants removed the case to this Court. The amended complaint asserts constitutional claims under 42 U.S.C. § 1983, common law battery claims, negligence claims, and claims under 42 U.S.C. § 1985. The core of the plaintiff's claims are based on the defendants' decision to administer a paralytic drug to Mr. Barnwell despite the plaintiff's contention that there was no medical reason for doing so.

The defendants have moved for summary judgment, arguing that the individual defendants are entitled to qualified immunity, and that the plaintiff cannot establish a violation of Mr. Barnwell's constitutional rights. The plaintiff has responded in opposition, and the matter is now ripe. For the reasons that follow, the defendants' motion for summary judgment will be granted in part and denied in part.

## I. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a

3

motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id*. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## II. Discussion

### A. Section 1983 Claims

The plaintiff's § 1983 claims against the medics and officers boil down to the defendants' decision to administer a paralytic drug without Mr. Barnwell's consent. The plaintiff asserts several theories of § 1983 liability, including excessive force under the Fourth Amendment, the

4

state-created danger doctrine, and failure to train. In response to the excessive force claim, the defendants argue that their intent in paralyzing Mr. Barnwell was to provide medical care. The defendants state that the officers only "used the force necessary to execute the seizure of Barnwell" and that the amount of force used was "necessary to control [Mr. Barnwell]." The plaintiff, on the other hand, contends that the defendants' actions were punitive in nature.

According to Dr. Steven Perlaky's affidavit, submitted by the plaintiff, there is "no rational theory in the health sciences for paralyzing the lungs in [Mr. Barnwell's] situation." [R. 34, Page ID 208]. The defendants, however, argue that they "needed to cause paralysis . . . so that [they] could place a tracheal tube to assist with breathing and heart function." On its face, this argument makes little sense—the defendants appear to be claiming that they paralyzed Mr. Barnwell's functioning lungs so they could insert a tube to help his lungs function. At this stage in the case, the Court has no way of determining whether administering a paralytic to an individual in this type of situation is reasonable, or whether it constitutes excessive force. The medical necessity of such a procedure and the defendants' intent in performing it present material questions of fact central to the plaintiff's case. Summary judgment on the plaintiff's excessive force claim is therefore inappropriate.

The defendants contend they cannot be held liable under the state-created danger doctrine because they did not "affirmatively act to create or increase the risk of injury" to Barnwell. They contend that they were simply providing him with medical care, which, regardless of how inept, cannot amount to a constitutional claim. In making this argument, the defendants miss the point of the plaintiff's claim. The defendants created a danger by allegedly paralyzing an individual and rendering him unable to breathe on his own despite there allegedly being no medical reason for such a procedure. Under the facts pled, viewed in a light most favorable to the plaintiffs, the

5

defendants' affirmative act of paralyzing Mr. Barnwell placed him in danger. Again, this case revolves around the medics' and officers' intent—whether they paralyzed him in an effort to provide medical care, or whether they paralyzed him with punitive intent. This cannot be resolved at the summary judgment stage. Accordingly, the defendants' motion for summary judgment will be denied with respect to this claim.

The defendants' qualified immunity defense is unavailing. Qualified immunity analysis is a two-step process, where the court considers (1) whether the defendant's action violated a constitutional right; and (2) whether that right was clearly established such that a reasonable officer would understand that he is violating it. *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). There is little question that administering paralytic drugs to an individual for no medical reason other than to punish or stop an annoyance (as alleged by the plaintiffs) could be found by a jury to be an excessive use of force in violation of the Fourth Amendment. Moreover, the Sixth Circuit has repeatedly stated that "the right to be free from excessive force is a clearly established Fourth Amendment right." *Champion v. Outlook Nashville, Inc.*, 380 F.3d at 902 (quoting *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001)).

For conduct to violate clearly established law, a plaintiff need not cite cases involving factually identical conduct. In fact, the Supreme Court has expressly rejected the requirement that previous cases be "fundamentally similar" or even "materially similar." *Hope v. Pelzer*, 536 U.S. at 741. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* General statements of the law are capable of giving fair and clear warning when a general constitutional rule applies "with obvious clarity" to the conduct in question, even though "the very action in question has [not] previously been held unlawful." *Id.*

6

(quoting *Anderson v. Creighton*, 483 U.S. at 640). Any reasonable officer with a general understanding of Fourth Amendment law should be on notice that needlessly paralyzing an individual with a punitive intent, or even with the simple intent to put an end to an annoyance, likely falls outside constitutionally permissible behavior. Accordingly, the individual defendants are not entitled to qualified immunity.

For itself, Roane County argues that it is entitled to summary judgment because the plaintiff cannot prove the existence of a policy or custom that was the moving force behind Mr. Barnwell's constitutional deprivation. Section 1983 does not allow plaintiffs to sue a local government under the theory of *respondeat superior*. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 692-94 (1988)). A plaintiff may only recover from the local government for its own wrongdoing. *Id.* Under *Monell*, the local government cannot be found liable unless the plaintiff can establish that an officially executed policy or the toleration of a custom leads to, causes, or results in the deprivation of a constitutionally protected right. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691).

"A 'municipal' custom may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004)). *Monell* liability requires a showing that the custom is "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (quoting *Doe v. Claiborne County*, 103 F.3d at 507).

There is a genuine issue of material fact relating to Roane County's alleged policy of paralyzing troublesome patients. The plaintiffs contend that "it was common practice for Roane

7

County EMS employees to use drugs to knock out unruly patients." [R. 32, Page ID 203]. This allegation, coming from a former Roane County EMS employee, is sufficient for the plaintiffs to survive summary judgment and engage in discovery relating to Roane County's customs and practices.

   B. *Section 1984 Claim*

In the plaintiff's response in opposition to summary judgment, she claims to have made out a *prima facie* case for failure to intercede under 42 U.S.C. § 1984. The plaintiff did not plead such a claim in her complaint or amended complaint. She cannot raise a new claim in her response. *See Desparois v. Perrysburg Exempted Village School Dist.*, 455 F. App'x 659 (6th Cir. 2012). This argument will be stricken.

   C. *Section 1985 Claims*

The plaintiff makes two § 1985 claims. She contends that the defendants conspired to obstruct or impede the due course of justice (42 U.S.C. § 1985(2)), and that they conspired to deprive Mr. Barnwell of equal protection under the law (42 U.S.C. § 1985(3)). These claims are without merit.

To prevail under § 1985(2), a plaintiff must prove first and foremost that there was a conspiracy. The plaintiff has not done so. The only alleged conduct that is relevant to this claim is the plaintiff's contention that Mr. Cooker tried to get Karen Human fired from her job at a pharmacy by threatening to stop doing business with the pharmacy after Ms. Human criticized Mr. Cooker for his handling of Mr. Barnwell's situation. While such behavior is far from commendable, the plaintiff has not alleged any meeting of the minds or any other behavior by the other defendants that could indicate Mr. Cooker's behavior was part of a broader conspiracy.

8

To prevail under § 1985(3), a plaintiff must show, among other things, that the defendants were motivated by class-based or racial animus. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). The plaintiff has not attempted to introduce evidence of a racial or class-based animus. She has not even alleged it. Accordingly, the defendants are entitled to summary judgment on the plaintiff's § 1985 claims.

*D. State Law Claims*

The plaintiff has also asserted a number of state law claims. Among the state law claims asserted in the amended complaint were medical malpractice claims against the EMS defendants. In October 2013, these medical malpractice claims were dismissed for failure to satisfy the procedural requirements of the Tennessee Health Care Liability Act. Tenn. Code Ann. § 29-26-115 *et seq.* The remaining claims, according to the plaintiff, are for:

1. Negligent Training against Roane County;
2. Negligent hiring supervision, and retention against Roane County;
3. Blocking Plaintiff's access to the courthouse;[1]
4. Common-law battery and wrongful death against Roane County and Officers Grigsby and Stooksbury; and
5. Common-law battery against the EMS defendants "inasmuch as paralyzing and intubating an independently breathing man is outside the rational practices of medicine."

[R. 121, Plaintiff's Reply, Page ID 836].

The TGTLA provides that municipalities are generally immune from suit except when immunity is removed. Tenn. Code Ann. § 29-20-201. Immunity has been removed for civil claims sounding in negligence. Tenn. Code Ann. § 29-20-205. But immunity is not removed in "civil rights" actions. Tenn. Code Ann. § 29-20-205(2). Accordingly, municipalities in

---

[1] This claim, whatever it is, lacks merit. While the plaintiff has endlessly expressed her displeasure with the defendants' litigation tactics, the plaintiff's discovery-related grievances are mainly the result of her own delay in conducting discovery. The defendants did nothing to keep the plaintiff from filing this lawsuit, and the plaintiff's apparent belief that the defendants have engaged in some sort of nefarious act by being represented by the same law firm is unsupported.

9

Tennessee are immune from liability for state-law claims asserting civil rights violations, even of those claims sound in negligence.

This is clearly a civil rights case. The torts alleged by the plaintiff were allegedly committed within the context of the plaintiff's civil rights violations. This Court has consistently held that a party cannot circumvent a municipality's immunity by couching civil rights claims in the guise of negligence. *See, e.g., Campbell v. Anderson County*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010). Roane County is immune under the TGTLA, and is therefore entitled to summary judgment on its state-law claims.

Finally, we reach the plaintiff's battery claims. Again, because this is a civil rights case, Roane County is immune. The officers, however, are not. The TGTLA does not grant immunity to individuals for intentional acts. *See Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010) ("[the plaintiff] brought this claim under the [TGTLA], which permits individuals to bring a cause of action against governmental employees who allegedly commit intentional torts"). Under Tennessee law, battery is "any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." *Raines v. Shoney's, Inc.*, 909 F.Supp 1070, 1083 (E.D. Tenn. 1995). In this case, while there is no question that there was an intentional contact, the parties do dispute whether the contact was unlawful. Officers Stooksbury and Grigsby, therefore, are not entitled to summary judgment on the plaintiff's battery claims.[2]

### III.

For the reasons set forth above, the defendants' motion for summary judgment [R. 99] is **Granted in Part and Denied in Part**. It is denied with respect to the plaintiff's state law battery claims asserted against Officers Stooksbury and Grigsby. It is also denied with respect to the plaintiff's § 1983 claims asserted against all the defendants. The defendants' motion for

---

[2] The plaintiff's state law claims against the medic defendants were previously dismissed. [R. 66].

summary judgment is otherwise granted.  The plaintiff's motion for leave to file a supplemental response [R. 147] is **Denied as moot**, and the plaintiff's motion to limit consideration [R. 148] is also **Denied as moot.**

    **IT IS SO ORDERED**.

    _____
    **UNITED STATES DISTRICT JUDGE**