UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ESTATE OF DUSTIN BARNWELL, by next of kin, S.C.B. a minor, b/n/f, SHASTA LASHAY GILMORE, <br><br> Plaintiff, <br><br> v. <br><br> ROANE COUNTY, TENN., *et al.,* <br><br> Defendants. | ) ) ) ) ) ) No. 3:13-CV-124-PLR-HBG ) ) ) ) ) ) |

### MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the Defendants' Motion in Limine to Exclude the Testimony of Dr. Steven Perlaky, M.D. [Doc. 203], filed on February 17, 2016. The Plaintiff filed a Response [Doc. 218] objecting to the Defendants' Motion. The parties appeared before the Court on March 29, 2016, for a motion hearing. Attorneys John Wolfe and Whitney Durand were present on behalf of the Plaintiff, and Attorneys Gina Sarli and Alexander Vogel were present on behalf of the Defendants.

After considering the parties' filings and the oral arguments, the Court finds that the Defendants' Motion in Limine to Exclude the Testimony of Dr. Steven Perlaky [Doc. 203] is not well-taken, and it is **DENIED.**

I.  BACKGROUND

The Complaint was removed to this Court on March 6, 2013. The Plaintiff brought this Complaint pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, along with several state law claims.

Specifically, the Complaint alleges that on November 11, 2011, two law enforcement officers responded to a 911 call placed by Shasta Gilmore. In the 911 call, Gilmore reported that Dustin Barnwell was "combative," but when officers arrived at the scene, Gilmore reported that she was concerned that Barnwell seemed unresponsive after taking some Flexeril tablets. The Complaint alleges that the officers immobilized and handcuffed Barnwell. Subsequently, medics arrived on the scene, and one medic administered Succinylcholine to Barnwell, which paralyzed his lungs. Barnwell stopped breathing, and the Plaintiff alleges that the medics inserted a breathing tube down his esophagus, instead of inserting the tube down his airways. Barnwell passed away, and the Plaintiff has alleged that the Defendants violated Barnwell's constitutional rights.

## II.  POSITIONS OF THE PARTIES

The Defendants' Motion [Doc. 203] requests that the Court exclude the testimony of Dr. Perlaky from providing any opinion testimony in this case. The Defendants argue that Dr. Perlaky's opinions are not reliable; Dr. Perlaky is not qualified to provide any opinion or expert testimony that is relevant to whether the Defendants can be held liable or to any issues concerning damages or cause of death; Dr. Perlaky's opinions will not assist the trier of fact in deciding whether the Defendants can be liable; and Dr. Perlaky has not applied the scientific principles or methods reliably to the facts. The Defendants also challenge Dr. Perlaky's expert disclosure because it is not in the form contemplated by Federal Rule of Civil Procedure 26.

In support of their Motion, the Defendants assert that Dr. Perlaky has a close, personal relationship with Plaintiff's attorney, John Wolfe, that presents an inherent bias impairing Dr. Perlaky's ability to render an objective and reliable expert opinion. In addition, the Defendants argue that the Plaintiff cannot establish Dr. Perlaky's qualifications pursuant to Federal Rule of Evidence 702.

The Plaintiff responds [Doc. 218] that Rule 702 is broader than the narrow view taken by the Defendants. With respect to Dr. Perlaky's expert disclosure, the Plaintiff argues that he previously complied with Federal Rule of Civil Procedure 26 and that his Affidavit attached as Exhibit 2 is in further compliance.[1] In addition, the Plaintiff argues that Dr. Perlaky's and Attorney Wolfe's personal relationship is unremarkable. Moreover, the Plaintiff asserts that Dr. Perlaky's testimony will assist the jury in determining the liability of the Defendants. The Plaintiff also avers that Dr. Perlaky applied principles and methods reliably to the facts of the case and that his twenty years of experience is sufficient grounds for his testimony. Finally, the Plaintiff submits that Dr. Perlaky's opinions are reliable and supported by the medical literature.

### III. ANALYSIS

The Court has considered the parties' positions, and for the reasons explained below, the Court finds the Defendants' Motion [Doc. 203] not well-taken, and it is **DENIED.**

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589. The Daubert standard "attempts to strike a

---

[1] The Court struck [Doc. 229] Paragraphs 7-11 of Dr. Perlaky's Affidavit because they contained information that expanded on Dr. Perlaky's previously disclosed opinions.

balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." Coffey v. Dowley Mfg., Inc., 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing Daubert, 509 U.S. at 593–94). "Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." Rose v. Sevier Cnty., Tenn., No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138-39 (1999)). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." Coffey, 187 F. Supp. 2d at 70-71 (quoting Daubert, 509 U.S. at 593-94).

The Rule 702 inquiry as "a flexible one," and the Daubert factors do not constitute a definitive checklist or test. Kumho Tire Co., 526 U.S. at 138-39 (citing Daubert, 509 U.S. at 593). Although the Rule 702 requirements are treated liberally, "'that does not mean that a witness is an expert simply because he claims to be.'" Coffey, 187 F. Supp. 2d at 971 (citing Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000)).

The Defendants raise three challenges in their Motion. First, they argue that Dr. Perlaky's Expert Disclosure was not provided in the form contemplated by Rule 26. Second, the Defendants assert that Dr. Perlaky has a close relationship with Plaintiff's counsel, John Wolfe,

which impairs his ability to render an objective opinion. Finally, the Defendants argue that Dr. Perlaky's testimony does not comport with the Rules 702 and 704 or the standards outlined in Daubert. The Court finds these arguments not well-taken.

With respect to Dr. Perlaky's disclosure, the Court has reviewed Dr. Perlaky's Expert Report [Doc. 203-1] and the Defendants' objections thereto. The Court notes that Dr. Perlaky's Expert Report was faxed to the Defendants in September 2014. The instant Motion was filed on February 17, 2016. The Defendants have had sufficient time to investigate any alleged deficiencies in Dr. Perlaky's Expert Disclosure, especially since Dr. Perlaky's deposition has already been taken in this matter. Accordingly, the Court finds that the Defendants' arguments are not well-taken.

The Defendants also argue that Dr. Perlaky has a close, personal relationship with Attorney Wolfe, counsel for the Plaintiff, that inhibits Dr. Perlaky's ability to render an objective opinion. The Court finds that the Defendants may highlight this alleged close, personal relationship with Attorney Wolfe through vigorous cross-examination, and the jury and the Court may determine what weight, if any, to give to Dr. Perlaky's testimony in light of such allegations.

Finally, with respect to the Defendants' arguments challenging Dr. Perlaky's expert testimony, the Court also finds these arguments to be not well-taken. Dr. Perlaky received his Doctor of Medicine at University of Southern Alabama College of Medicine. [Doc. 200-2]. Although he is not board certified, Dr. Perlaky has been practicing emergency medicine for twenty years. [Doc. 218-2]. During the hearing, the Defendants stated that they believe Dr. Perlaky may testify about the rapid sequence intubation ("RSI") protocol and emergency room care, but they argued that he could not testify about the effects of Flexeril because he is not a

5

toxicologist. The Defendants admitted, however, that Dr. Perlaky does prescribe Flexeril. Moreover, Dr. Perlaky is licensed to practice medicine and has been practicing emergency room medicine for over twenty years [Doc. 218-2]. The Court finds that Defendants' concerns can be addressed through cross-examination of Dr. Perlaky.

In addition, the Defendants cite instances in its Memorandum of Law wherein the Defendants allege that Dr. Perlaky has "ignored the facts" or slanted the facts in rending his opinion, but again, these concerns can be addressed through cross-examination. See Spears v. Cooper, No. 1:07-cv-58, 2008 WL 5552336, at *5 (E.D. Tenn. Nov. 17, 2008) ("[C]redibility attacks, such as the use of incorrect or incomplete data in formulating an opinion, are intended for cross-examination."). Finally, Defendants argument that Dr. Perlaky's testimony will not assist the trier of fact is unavailing as Mr. Barnwell's cause of death is at issue. Accordingly, the Court finds the Defendants' argument to be not well-taken.

## IV. CONCLUSION

Based on the foregoing conclusions, the Court hereby **DENIES** Defendants' Motion in Limine to Exclude Testimony of Dr. Steven Perlaky [**Doc. 203**].

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge