# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| ESTATE OF DUSTIN BARNWELL, by next of kin, S.C.B., a minor, b/n/f, SHASTA LASHAY GILMORE, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | NO. 3:13-CV-00124 REEVES/GUYTON |
| MITCH GRIGSBY, DAVID RANDLE, RICHARD STOOKSBURY, and ROBERT COOKER, in their individual capacities, | ) ) ) ) ) | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

This lawsuit began in November 2012. By the time the case went to trial on October 3, 2017, the issues to be decided for each remaining defendant—two officers and two medics—were as follows: (1) whether the defendant had a role in administering the succinylcholine to Dustin Barnwell; (2) if so, whether the defendant was acting in a law-enforcement capacity or as a medical responder; (3) if the former, whether the administration of the drug was objectively reasonable or instead constituted excessive force; and (4) if the administration was objectively unreasonable, whether the defendant acted with evil motive or intent [*see* D. 298, at 8; Trial Transcript (T.T.), D. 366, at 57, 59, 149]. For the officer defendants, there was an additional issue as to whether either officer had committed a state-law battery.

Upon conclusion of Plaintiff's proof, Defendants moved for judgment as a matter of law on grounds that a reasonable jury would not have a legally sufficient evidentiary basis to find in favor of Plaintiff. *See* FED. R. CIV. P. 50(a). After consideration, the Court found that Plaintiff had

1

presented no proof that either of the officer defendants (Grigsby and Stooksbury) ordered that the medics use succinylcholine, or that they did anything to assist in its administration aside from restraining Mr. Barnwell [T.T., D. 366, at 147-49]. Additionally, the Court found that there was no proof that the medic defendants (Randle and Cooker) were acting to assist law enforcement in enforcing the law or in deterring misconduct [*Id.*]. Because the defendants were all acting to render solicited aid in an emergency situation, the Fourth Amendment does not apply.[1] Accordingly, the Court granted Defendant's motion for judgment as a matter of law, and the case was dismissed. Judgment was entered in Defendants' favor the following day, on October 6, 2017 [D. 362].

On November 2, 2017, Plaintiff filed a motion [D. 367] under Federal Rules of Civil Procedure 59(e) and 60(b)(6) and the Seventh Amendment, asking the Court to reconsider this Judgment, as well as two previous orders, dated October 25, 2013 [D. 66], and June 16, 2016 [D. 250]. Defendants responded in opposition [D. 369], and Plaintiff replied [D. 370]. For the reasons explained below, the Court declines to reconsider either of these orders or its judgment, and Plaintiff's motion for reconsideration will be denied in its entirety.

I. **LEGAL STANDARDS**

   A. **Fed. R. Civ. P. 59(e)**

   Under Federal Rule of Civil Procedure 59(e), a party may file a motion to alter or amend a final judgment no later than 28 days after the entry of the judgment. A court may grant a Rule 59(e) motion based on "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Nolfi v. Ohio Ky. Oil Corp.*,

---

[1] *See McKenna v. Edgell*, 617 F.3d 432, 439-40 (6th Cir. 2010) (holding that "whether the officers were entitled to qualified immunity depends on whether they acted in a law-enforcement capacity or in an emergency-medical-response capacity"); *Peete v. Metro. Gov't of Nashville & Davidson Cty.*, 486 F.3d 217, 222 (6th Cir. 2007) ("Assuming arguendo that the restraint techniques used by the EMTs were excessive or medically unreasonable, the plaintiff may be entitled to recovery under the state law of negligence, but improper medical treatment by a government employee, standing alone, does not violate the Fourth or Fourteenth Amendment.").

675 F.3d 538, 551-52 (6th Cir. 2012). But Rule 59(e) "may not be used to relitigate old matters, or to raise arguments … that could have been raised prior to the entry of judgment." *J.B.F. by & through Stivers v. Ky. Dep't of Educ.*, 690 F. App'x 906, 907 (6th Cir. 2017) (*quoting Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)). Ultimately, the grant or denial of a Rule 59(e) motion "is within the informed discretion of the district court, reversible only for abuse." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (citation and internal quotation marks omitted). *See also Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.,* 616 F.3d 612, 615 (6th Cir. 2010) (noting that the district court has "considerable discretion" in deciding whether to grant a motion under Rule 59(e)).

**B. Fed. R. Civ. P. 60(b)(6)**

A Rule 60 motion for relief from a final judgment may be granted only for certain specified reasons, including mistake, fraud, newly discovered evidence, and a void or satisfied judgment. *See* FED. R. CIV. P. 60(b). Plaintiff is proceeding under subsection (b)(6), "a 'catch-all provision' providing relief from a final judgment for any reason not otherwise captured in Rule 60(b)." *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (*citing West v. Carpenter*, 790 F.3d 693, 696-97 (6th Cir. 2015)). Rule 60(b)(6) applies only in "exceptional and extraordinary circumstances where principles of equity mandate relief." *Id.* The Sixth Circuit has made clear that the district court's discretion in deciding a Rule 60(b)(6) motion is "especially broad due to the underlying equitable principles involved." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014) (internal quotation marks and citation omitted).

### C. Seventh Amendment

The Seventh Amendment to the United States Constitution provides for the right to a civil jury trial. U.S. CONST., amend. VII. The maintenance of a jury as a fact-finding body "is of such importance … that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 485-86 (1935). Nevertheless, it has long been settled that the entry of judgment as a matter of law before the case reaches the jury does not violate the Seventh Amendment's guarantee. *See Weisgram v. Marley Co.*, 528 U.S. 440, 449-50 (2000); *Neely v. Martin K. Eby Const. Co.*, 386 U.S. 317, 321 (1967); *Galloway v. United States*, 319 U.S. 372, 389 n.19 (1943) (citing cases as early as 1850). Thus, once a party has been fully heard on an issue at a jury trial, the Court may grant a motion for judgment as a matter of law for the opposing party if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmovant]." FED. R. CIV. P. 50(a). That is what occurred in this case at the conclusion of Plaintiff's proof on the third day of trial.

## II. DISCUSSION

### A. October 25, 2013 Order [D. 66]

#### 1. *Background*

The Court's October 25, 2013 Order addressed two motions challenging Plaintiff's medical malpractice claim against Roane County and four individual medics. In April 2013, these defendants moved to dismiss the claim against them due to Plaintiff's failure to comply with the good faith certification requirements under the Tennessee Health Care Liability Act (THCLA), Tenn. Code Ann. § 29-26-122 [D. 8, 24]. In August 2013, they also moved for summary judgment on grounds that Plaintiff had not complied with the THCLA's pre-suit notice requirements as stated in Tenn. Code Ann. § 29-26-121 [D. 48].

4

On September 26, 2013, United States District Judge David L. Bunning held a telephonic oral argument on these motions [D. 50], after which he ordered Plaintiff's counsel to file an affidavit demonstrating extraordinary cause for Plaintiff's failure to comply with the statutory requirements [D. 59]. Plaintiff's counsel submitted an affidavit [D. 63], but it was insufficient. Judge Bunning determined that counsel had not provided any new information for the Court's consideration, but simply "restate[d] facts and allegations that are already contained in the record." [D. 66, at 3]. This showing did not constitute "extraordinary cause," which would excuse Plaintiff's non-compliance with the statutes. Thus, on October 25, 2013, Judge Bunning dismissed Plaintiff's medical malpractice claim [*Id.*]. In doing so, he noted that non-compliance with either Tenn. Code Ann. § 29-26-121 or § 29-26-122 would support a dismissal with prejudice [*Id.* at 3 nn.1-2].

2. *Analysis under Rule 59(e)*

Plaintiff does not expressly state the grounds for her motion under Rule 59(e), but it seems to turn on an alleged intervening change in controlling law. She says that, in the years since Judge Bunning's decision, "there has been a noticeable trend in the judicial interpretation of Tenn. Code Ann. §§ 29-26-121 and 29-26-122," which has led to the relaxation of certain technical and procedural requirements [D. 368-1, at 14].

i. <u>Tennessee Code § 29-26-121</u>

Tenn. Code Ann. § 29-26-121 requires a plaintiff asserting a medical malpractice claim to provide "written notice of the potential claim to each health care provider that will be a named defendant at least sixty days before the filing of a complaint." Tenn. Code Ann. § 29-26-121(a)(1). Notice may be given either personally or by certified mail. *Id.* § 29-26-121(a)(3). "The statute is very specific about how and when the notice must be sent and the information the notice must contain." *Conrad v. Washington Cty.*, 2012 WL 554462, at *2 (E.D. Tenn. Feb. 21, 2012) (Jordan,

J.). Plaintiff must also state in the complaint whether she complied with the pre-suit notice requirements, and must attach documentation certifying proof of service. Tenn. Code Ann. §§ 29-26-121(a)(3). Compliance with the statute may be excused "only for extraordinary cause shown." *Id.* § 29-26-121(b).

In this case, it is undisputed that Plaintiff only provided pre-suit notice to Roane County. [*see* D. 1-1, at 7; D. 22]. None of the four medic defendants received any sort of individualized notice. Nor were their addresses provided in the notice to Roane County, as is required under Tenn. Code Ann. § 29-26-121(a)(2)(D) [*see* D. 48-1]. In her response to the defendants' motion for summary judgment, Plaintiff claimed that the medics were immune from suit in their individual capacities, and thus, "[w]hen Roane County received its notice of claim and HIPPA authorization, so did the employees." [D. 55, at 2].

In her motion for reconsideration, Plaintiff maintains that Roane County is the only proper defendant for her medical malpractice claim because the medics would be immune under the Tennessee Governmental Tort Liability Act (TGTLA) [D. 368-1, at 16; D. 370, at 1-2]. Of course, this is not necessarily true. *See Mooney v. Sneed*, 30 S.W.3d 304, 308 (Tenn. 2000) (holding that the EMT-defendants who negligently intubated a minor are "health care practitioners" within the meaning of Tenn. Code Ann. § 29–20–310(b), and thus, that they are *not* protected by TGTLA's immunity provisions). But in any case, whether a party is *suable* is a different question than whether that party can be held *liable*. And the fact remains: in this action, Plaintiff named four medic defendants—who clearly qualify as suable "health care providers" under the THCLA—and then failed to provide them with individualized notice of the suit against them. *See* Tenn. Code Ann. § 29-26-101(a)(2)(D) (defining "health care providers"). The THCLA does not differentiate based on the capacity in which the defendant has been sued; rather, the statute's plain language

6

clearly states that notice must be given to "*each* health care provider that will be a *named* defendant." Tenn. Code Ann. § 29-26-121(a)(1) (emphasis added). And the burden of effectuating notice is indisputably on the plaintiff—not on another defendant or on another defendant's employer. *Id.*

It is true that the statutory requirements regarding the *contents* of the pre-suit notice or the proof-of-service affidavit may generally be satisfied by substantial compliance.[2] But the requirement of pre-suit notice *itself* is "fundamental, mandatory, and not subject to satisfaction by substantial compliance." *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 519 (Tenn. 2014) (*citing Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309, 310 (Tenn. 2012)) (internal quotation marks omitted). Thus, *even under current* law, Plaintiff's failure to give pre-suit notice to the four medic defendants is fatal to her claim under Tenn. Code Ann. § 29-26-121.

ii. Tennessee Code § 29-26-122

Tenn. Code Ann. § 29-26-122 states that in any health care liability action in which expert testimony is required, the plaintiff must file a certificate of good faith with the complaint. The statute sets out certain content that must be included in the certificate. *See id.* §§ 29-26-122(a)(1)-(2) (detailing what the certificate "shall state"). In this case, Plaintiff appended a certificate of good faith at the bottom of her original complaint [*see* D. 1-1][3], but its content was deficient under then-

---

[2] *See, e.g.*, *Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015) ("The content and affidavit requirements of Tennessee Code Annotated sections 29-26-121(a)(2), (a)(3), and (a)(4) … can be achieved through substantial compliance."); *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 521 (Tenn. 2014) (holding that "the statutory requirement of an affidavit of the person who sent pre-suit notice by certified mail may be satisfied by substantial compliance"); *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (holding that "a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E)," which deals with the HIPAA-compliant medical authorization).

[3] It is unclear to this Court whether Judge Bunning considered the good faith certificate on Plaintiff's original or amended complaint. But either way, the result is the same. Although Plaintiff's amended complaint included a more detailed certificate, counsel failed to check the appropriate subsection to indicate the particular steps that counsel had taken to ensure that the action had a good faith basis [D. 20, at 13]. As Plaintiff's *own form* explicitly acknowledges, this failure "will make [the] case subject to dismissal with prejudice."

7

governing law. Judge Bunning's order did not explicitly discuss the ways in which the certificate was wanting, but it appears to be twofold: (1) the certificate did not include a statement as to the number of prior violations of the statute by the executing party, as required in § 29-26-122(d)(4); and (2) it did not state that the expert consulted is competent to express an opinion in the case, per § 29-26-122(a)(1)(A).

In her motion for reconsideration, Plaintiff contends that the certificate's first alleged deficiency is "no longer fatally non-compliant" in light of an intervening change in the law [D. 368-1, at 14]. She cites to the Tennessee Supreme Court's 2015 decision in *Davis ex rel. Davis v. Ibach*, which held that "the requirement … that a certificate of good faith disclose the number of prior violations of the statute does not require disclosure of the *absence* of any prior violations of the statute." 465 S.W.3d 570, 574 (Tenn. 2015). And neither Plaintiff nor her counsel had any prior violations to disclose. But Plaintiff reads *Davis* too narrowly. That case was decided on grounds of statutory interpretation, *not* substantial compliance. *See id.* (interpreting "the plain language of the statute" in determining that failing to disclose *zero* prior violations of the statute does not violate the requirements of § 29-26-122(d)(4)); *Kerr v. Thompson*, 2015 WL 3580738, at *1 (Tenn. Ct. App. June 9, 2015) ("Based on *Davis*, we conclude that plaintiff's certificate of good faith was *fully compliant* with Tennessee Code Annotated Section 29-26-122."). Thus, in light of current law, Plaintiff's certificate of good faith was in fact fully compliant with § 29-26-122(d)(4).

However, the certificate was and remains deficient for its failure to strictly comply with § 29-26-122(a)(1)(A), which requires confirmation that the expert consulted is competent to express an opinion in the case. And, under the law as it currently stands, failure to include this provision subjects Plaintiff's complaint to dismissal with prejudice.[4] As Judge Bunning noted in 2013,

---

[4] In 2012, the Supreme Court of Tennessee expressly reserved holding on "whether the statutes' requirements as to the content of … the certificate of good faith may be satisfied by substantial compliance." *Myers v. AMISUB (SFH),*

8

dismissing a claim on technical grounds may seem harsh. But the Court must follow the dictates of the law; and "it is the Tennessee legislature, and not this Court, that drafts the laws of the state." *Litton*, 2012 WL 4372375, at *4.

In her reply, Plaintiff also argues (presumably in the alternative) that two matters constitute "extraordinary circumstances" that should excuse her non-compliance under Tenn. Code Ann. § 29-26-122(a)(2)(B) [D. 370, at 2]. But both issues that Plaintiff now raises were already presented to and rejected by Judge Bunning back in 2013 [*see* D. 63]. Plaintiff cannot relitigate those issues now. Finally, as for the specific reference to § 29-26-122(a)(2)(B), Plaintiff has never relied upon this subsection before, and a Rule 59(e) motion is not the time to raise new arguments that could have been raised much earlier. *See J.B.F. by & through Stivers v. Ky. Dep't of Educ.*, 690 F. App'x 906, 907 (6th Cir. 2017).

3. *Analysis under Rule 60(b)(6)*

Plaintiff has not set forth any additional circumstances that would justify relief under Rule 60(b)(6). Slight changes in the governing law are neither exceptional nor extraordinary, particularly in light of the Sixth Circuit's guidance that Rule 60(b)(6) relief "is circumscribed by public policy favoring finality of judgments and termination of litigation." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014). In this case, these policy concerns weigh heavily against reconsideration.

---

*Inc.*, 382 S.W.3d 300, 310 (Tenn. 2012). In 2015, the Sixth Circuit certified the question to the Supreme Court of Tennessee. *Eiswert v. United States*, 619 F. App'x 483, 486-87 (6th Cir. 2015). But the Supreme Court of Tennessee declined to decide whether state law requires strict compliance under § 29-26-122 because the issue was not outcome determinative in the case before it. The Sixth Circuit then disposed of the case on alternate grounds, and surmised that the developments in the law regarding the interpretation of § 29-26-121 "may bear upon the issue of whether § 29-26-122 also permits substantial compliance." 639 F. App'x 345, 348 (6th Cir. 2016). But that issue has yet to be decided. In light of this uncertainty, the Court finds that it would be inappropriate to reconsider Judge Bunning's 2013 Order and decide this issue *sua sponte*.

Plaintiff says that she was unable to challenge the dismissal of her medical malpractice claim earlier because Judge Bunning "did not use the language that would have made his adjudication final and thus appealable" [D. 368-1, at 13]. But even without the ability to appeal the order to the Sixth Circuit, Plaintiff certainly could have asked this Court to reconsider it. The last sentence of Rule 54(b) expressly permits a district court to revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).[5] *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."). Plaintiff did not seek revision of the October 25, 2013 Order under this provision. Instead, she waited nearly three years before asking the Court to certify the order as a final judgment under the *first* portion of Rule 54(b), so that Plaintiff could seek review in the Sixth Circuit [D. 273]. The Court found that certification for appeal was not justified at that time [D. 278].

Now, more than four years after the order was entered—and nearly three years after Roane County was dismissed from this case [*see* D. 162]—Plaintiff asks the Court to reconsider this order under Rules 59 and 60, and to reinstate her medical malpractice claim against Roane County [D. 370, at 1-2]. To do so at this point "would subvert the judicial imperative of bringing litigation to an end and would serve no need other than to correct what has—in hindsight—turned out to be poor strategic decision by [the plaintiff]." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Based on the foregoing, the Court declines to reconsider Judge Bunning's October 25, 2013 Order.

---

[5] Rule 54(b) provides, in pertinent part, that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment." FED. R. CIV. P. 54(b). The Court's October 25, 2013 Order was interlocutory in character because it "adjudicate[d] fewer than all the claims" in this case. *Id.*

**B. June 16, 2016 Order [D. 250]**

In February 2016, all of the then-remaining defendants filed a second motion for summary judgment [D. 202], seeking dismissal of the claims against them. On June 16, 2016 [D. 250], the Court granted the motion in part and denied it in part. In her motion for reconsideration, Plaintiff challenges only one aspect of the Court's ruling: the dismissal of Plaintiff's § 1983 claim that Defendants Grigsby, Stooksbury, and Myers (a medic) used excessive force in restraining Mr. Barnwell prior to the administration of the succinylcholine.[6] The Court found that "it is undisputed that Mr. Barnwell was combative prior to being restrained and handcuffed," and thus, the force used in restraining Mr. Barnwell was objectively reasonable under the circumstances [D. 250, at 8]. Accordingly, the Court granted the defendants qualified immunity as to this aspect of Plaintiff's excessive-force claim.

Plaintiff now contends that the Court committed a clear error of law because it failed to apply the appropriate standard for ruling on a motion for summary judgment. Plaintiff says that "there were two contrasting versions of the events that occurred prior to the administration of the paralytic drug, but the Court accepted that of the Defendants." [D. 368-1, at 17]. Specifically, she says that the statements of four people created a genuine dispute as to whether Mr. Barnwell was "combative" and thus, whether the officers' and medic's physical restraint of Mr. Barnwell was objectively reasonable [D. 370, at 3-4].

Regardless of whether this argument has any merit—which the Court need not decide today—Plaintiff has not shown that this alleged factual dispute is *material* to the Court's qualified immunity analysis, or that its consideration (or reconsideration) would alter the Court's conclusion

---

[6] In the June 16, 2016 Order, the Court also granted Defendants' motion as to the *Monell* claim against Roane County and all claims against Defendant Carter. But Plaintiff has not raised any arguments claiming that either Roane County or Carter were improperly dismissed, so the Court need not address those aspects of the Order.

11

as to this claim. In this case, the ultimate question of "whether the officers were entitled to qualified immunity depends on whether they acted in a law-enforcement capacity or in an emergency-medical-response capacity when engaging in the conduct that [Plaintiff] claimed violated the Fourth Amendment." *McKenna v. Edgell*, 617 F.3d 432, 439-40 (6th Cir. 2010).

It appears that in her response to defendants' second motion for summary judgment, Plaintiff proffered *some* evidence to dispute Defendants' contention that Mr. Barnwell was "combative." But she presented *no* admissible evidence—beyond mere speculation and hearsay—that the defendants restrained Mr. Barnwell (whatever his state) in order to punish or incarcerate him, rather than to assist the medics in rendering solicited aid in an emergency.[7] Simply put, a non-movant "cannot survive summary judgment through speculation or conjecture," *Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015), or by relying on hearsay evidence. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (discussing "the obligation of a summary judgment opponent to make her case with a showing of facts that can be established by evidence that will be admissible at trial"). Because the record is devoid of any admissible, non-hearsay evidence that would enable a reasonable jury to find for Plaintiff on this issue, the defendants are entitled to qualified immunity *regardless* of whether Mr. Barnwell was combative. *See Peete v. Metro. Gov't of Nashville & Davidson Cty.*, 486 F.3d 217, 222 (6th Cir. 2007) ("Assuming arguendo that the *restraint techniques* used by the EMT's were ***excessive or medically unreasonable***, the plaintiff may be entitled to recovery under the state law of negligence, but improper medical treatment by a government employee, standing alone, does **not** violate the Fourth or Fourteenth Amendment.").

---

[7] The Court further notes that Plaintiff's *entire* excessive-force argument focuses on the administration of the succinylcholine and the use of the Rapid Sequence Intubation procedure; she never once states that the force used in restraining Mr. Barnwell was excessive [*see* D. 228, at 13-15].

Since Plaintiff's argument does not alter the Court's June 6, 2016 ruling as to this claim, any alleged error in that Order is harmless, and does not warrant reconsideration.

### C. October 6, 2017 Judgment [D. 362]

Finally, Plaintiff asks the Court to reconsider its October 6, 2017 Judgment [D. 362], which reflects the Court's ruling from the bench granting judgment as a matter of law to Defendants at the conclusion of Plaintiff's proof. In support of her motion, Plaintiff argues that she was unconstitutionally deprived of her right to testify at the trial, and that the Court's dismissal of this case violates Federal Rule of Civil Procedure 50(a) and thus, the Seventh Amendment. The Court will address each argument in turn.

1. *Right to Testify at Trial*

After nearly five years of pre-trial litigation, this case went to trial on October 3, 2017. Unfortunately, the day before she was scheduled to testify, Plaintiff almost entirely lost her voice due to an illness. Even so, Plaintiff's counsel did not request a continuance. When the Court inquired as to the plan for her testimony, Plaintiff's counsel stated that his intention was "to read her deposition in [its] entirety if [the Court] is satisfied that she really can't talk" [T.T., D. 364, at 5]. The Court then called Plaintiff to the witness stand to examine her condition, and discussed with counsel whether she would be considered "unavailable" under the Federal Rules of Civil Procedure. During this conversation, *defense counsel* objected to the reading of a deposition [*Id.* at 18]. But Plaintiff's counsel stated: "[I]t seems to me that illness or injury or loss of voice or things like that must happen during the course of trials, and therefore the court has to … resort to the next best alternative, which in this case is a deposition." [*Id.* at 16]. This is correct. Under Rule 32, "[a] party may use for *any purpose* the deposition of a witness, **whether or not a party**, if the court

finds that the witness cannot attend or *testify* because of age, ***illness***, infirmity, or imprisonment." FED. R. CIV. P. 32(a)(4)(c) (emphasis added).

The Court permitted Plaintiff to attempt to testify in the presence of the jury, in the hopes that she would be comprehensible. She was not. The court reporter, the judge, defense counsel, and even one of Plaintiff's attorneys all stated that they were having difficulty understanding Plaintiff's testimony [*see* T.T., D. 364, at 57-63]. Because Plaintiff's counsel did not have another witness ready to testify that day, the Court released the jury until the following morning. The Court and counsel then spent a significant amount of time going through Plaintiff's deposition line by line, and agreeing upon the portions that would be read at trial the next day if Plaintiff's voice did not improve overnight.[8]

The next morning, the Court and Plaintiff's counsel had the following exchange:

> THE COURT: So are we going to begin by reading [Plaintiff's] deposition?
>
> MR. WOLFE: Yes, your honor.
>
> THE COURT: Okay. So I can explain that to the jury that [Plaintiff's] voice is still fragile and ***she's not going to be <u>able</u> to testify***. *Correct?*
>
> MR. WOLFE: *Yes, your honor. **That's correct**.*

[T.T., D. 365, at 6-7 (emphasis added)]. Based on the assurances of Plaintiff's counsel that Plaintiff was in fact unable (and thus, "unavailable") to testify, the Court then adopted the "next best alternative"—*twice proposed by Plaintiff's counsel*—and permitted the agreed-upon portions of Plaintiff's deposition to be read into the record.

In her motion for reconsideration, Plaintiff now states (without any legal support) that her constitutional right to a trial by jury was violated when the Court did not continue the trial, and

---

[8] The Court also informed Plaintiff's counsel that Plaintiff may present live testimony "if her voice recovers before … close of your proof." [T.T., D. 364, at 73]. This did not occur.

14

when the Court did not permit counsel to examine the jury one-by-one to determine whether each juror could hear and understand Plaintiff's testimony.

As to the first argument, it is not incumbent on the Court to *sua sponte* continue a trial, particularly when no party requested a continuance, and when the federal rules contemplate an acceptable solution to the precise scenario before the Court. Plaintiff's second argument is similarly baseless, particularly in light of counsel's representations to the Court on the second day of trial. The Federal Rules of Civil Procedure do not specify *how* the Court is to determine unavailability under Rule 32; only that the Court must do so. This Court did so, and, in this case, Plaintiff's counsel explicitly *agreed* with this finding. Based on the foregoing, the Court finds that Plaintiff's motion for reconsideration on the basis of the Seventh Amendment is wholly without merit.

2. *Dismissal of the Action under Rule 50(a)*

Plaintiff also says that the Court committed a clear error of law (and a constitutional violation!) when it granted Defendants' motion for judgment as a matter of law after the conclusion of Plaintiff's proof. But in her motion for reconsideration, Plaintiff makes virtually zero argument in support of her position. Rather than discuss specific evidence, she simply quotes the Court's ruling from the bench, and states: "Suffice it to say that there was more than enough evidence for the Court to decline to dismiss the case...." [D. 368-1, at 19-20]. Obviously, the Court disagreed.

To reiterate: the ultimate issue before the jury was whether the administration of the succinylcholine to Dustin Barnwell was "objectively reasonable."[9] But as preliminary matters, the viability of Plaintiff's claim turned on whether each defendant played a role in the administration of the succinylcholine, and, if so, whether the defendant acted in a law-enforcement or medical-responder capacity. Based on the evidence that Plaintiff presented at trial, the Court found that a

---

[9] At trial, the Court had to repeatedly remind Plaintiff's counsel to focus on evidence that was relevant to the narrow issues before the jury. [*See, e.g.*, T.T., D. 365, at 114, 116; D. 366, at 13, 54, 57].

15

reasonable jury would not be able to conclude that the officer defendants were in any way involved in the decision to administer the drug,[10] or that the medic defendants were acting in anything but a medical response capacity. Thus, all defendants were entitled to qualified immunity on this issue as a matter of law.

In her reply, Plaintiff raises a few specific arguments, but none are availing. She almost "exclusively rehashes misguided and failed summary judgment arguments and regurgitates rejected case theories, thus constituting sufficient reason to deny the motion outright." *J.B.F. by & through Stivers v. Ky. Dep't of Educ.*, 690 F. App'x 906, 907 (6th Cir. 2017) (affirming the district court's denial of plaintiff's Rule 59(e) motion after granting judgment as a matter of law to defendants) (cleaned up). "To be sure, a court can always take a second look at a prior decision; but it need not and should not do so in the vast majority of instances, especially where such motions merely restyle or re-hash the initial issues." *Fisher v. Wellington Exempted Vill. Sch. Bd. of Educ.*, 223 F. Supp. 2d 833, 850 (N.D. Ohio 2001) (internal quotation marks and citation omitted). Despite Plaintiff's argument to the contrary, the Court set out sufficient reasons for granting defendants' motion when it ruled from the bench.[11] The Court thus declines to reconsider its decision to grant the defendants judgment as a matter of law as to the claims that went to trial.

---

[10] As Plaintiff freely admits in her reply, "[t]he precise role of the Defendants Stooksbury and Grigsby in the administration of succinylcholine may not be specific, but they were present at its administration by the medics…" [D. 379, at 8]. Presence alone is clearly insufficient to sustain a § 1983 claim for excessive force.

[11] Plaintiff contends that the Court "ruled in a conclusory fashion without reciting facts." [D. 370, at 6]. To the contrary, the Court clearly stated its reasoning for the record, and cited specific cases in support [*see* T.T., D. 366, at 146-49]. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 555 (6th Cir. 1993) (reversing a magistrate judge's decision to grant judgment as a matter of law when the judge failed to give *any indication* for the decision); *Garrison v. Jervis B. Webb Co.*, 583 F.2d 258, 261 n.3 (6th Cir. 1978) (stating that, in ruling on a Rule 50(a) motion, "formal findings of fact and conclusions of law [are] not required," but that making such findings is the "better practice").

**III.    CONCLUSION**

Ultimately, the grant or denial of a motion for reconsideration under Rule 59(e) or Rule 60(b)(6) is well within the district court's sound discretion. In light of the foregoing, the Court declines to reconsider its October 25, 2013 or June 16, 2016 Orders, or its October 6, 2017 Judgment. Accordingly, Plaintiff's motion for reconsideration [D. 367] is **DENIED** in its entirety, and this case will remain closed.

**IT IS SO ORDERED.**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**